UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TRESSA L. SIMMONS,**

    **Plaintiff,**

v.                        Case No. 8:09-cv-1950-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments. The Plaintiff urges that her case be reversed and remanded for an award of benefits or alternatively for further consideration of certain uncontroverted findings of Dr. Colon, a treating doctor, and for failure to employ those uncontroverted manipulative limitations into the hypothetical to the vocational expert (VE). For the reasons set out herein, the decision is affirmed.

A.

Plaintiff was forty-three years old at the time of her first administrative hearing in April 2007. She stands 5-feet, 5-inches tall and weighed 160 pounds. Plaintiff has a seventh grade education and can read and write. Her filings suggest past work as a counter worker in

a fast food restaurant, as a machine operator, and a warehouse worker.[1] Plaintiff applied for Supplemental Security Income payments in June 2004, alleging disability as of May 3, 2004, by reason of neck and back injury, psoriasis, and anxiety. The Plaintiff's application was denied originally and on reconsideration.

The initial de novo hearing before an Administrative Law Judge (ALJ) was conducted on April 17, 2007. Plaintiff was represented at the hearing and testified that she is unable to work because of low back pain, psoriasis, and depression. By her account, she suffers from disc protrusions in the neck and low back which cause her severe pain. She was prescribed Oxycodone and Methadone, as well as muscle relaxers for the condition. By her account, she has to lie down four to five hours during the day. She takes lots of baths which help with the pain, but not the psoriasis. Plaintiff has severe psoriasis on her legs and buttocks. She testified that when she sweats she feels as if she is on fire. She has taken some cortisone but is unable to see a dermatologist due to a lack of funds. She recently has begun taking medication for her depression as well.

Plaintiff acknowledges a history of drug and alcohol abuse but testifies that she has not used street drugs in ten or eleven years and is off alcohol for about the same period of time.

---

[1]According to the vocational expert, Plaintiff had no past relevant work as such is defined under the Act.

Plaintiff estimated she could lift six to eight pounds but it "messes" her up.  She can sit and stand for ten to twenty minutes.  If she stands too long, she has to lie down due to the pain.  She can walk a block to a block and a half.  (R. 457-63).

Plaintiff had a brief hearing on February 6, 2008.  At that hearing, the representative amended the alleged onset date to August 10, 2004, to coincide with a motor vehicle accident.  Because of the medical records brought in, the hearing was again reset.

The final portion of the administrative hearing was conducted May 1, 2008.  The bulk of the hearing involved testimony from a medical expert (ME), Dr. John Axline, a retired orthopedic doctor who had reviewed Plaintiff's record.  At the outset, the ALJ identified history of substance abuse, history of obesity, cervical syrinx, psoriasis, lumbar disc herniation, spondylolisthesis and history of depression as matters revealed by the medical record.  In addition, the ME mentioned equivocal ANA test results.  The ALJ and ME together addressed reasons to discount the residual functional capacity (RFC) assessment by Dr. Colon.[2]  Next, the ME agreed in part with the ALJ's proposed RFC which allowed for a ten-pound lift with a sit/stand option and only occasional stooping, squatting, kneeling, crawling, and climbing up stairs with no reaching above the shoulders and only simple work.  By the ME's opinion, the limitations were overly restrictive because there was no pathology

---

[2]In essence, the RFC opinion of Dr. Colon was discounted because it was inconsistent with his and other records.  For instance, he assessed abnormal gait, sensory loss, reflex changes, tenderness and swelling in the feet and arms, and muscle spasms with weaknesses which were not reflected in the doctor's own clinical findings and because cervical examinations found normal neurology yet the doctor diagnosed her with radiculopathy.  The ME also testified that he could find no basis in the record for his requirement that Plaintiff elevate her feet as assessed by this doctor.

3

on the upper extremities and range of motion in the neck and shoulders had been normal.  In the ME's opinion, Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently with both arms.

The ME also noted that a number of examinations had revealed no neurologic deficit. And he discounted a finding of cervical radiculopathy in connection with the cervical syrinx as not being supported by the findings.  In short, by the ME's account, the syrinx finding was interesting but of little significance - it was centered at C6-C7, there is no indication of an enlargement of the spinal cord, nor did the condition appear progressive.

As for objective evidence to support the pain complaints, the ME noted a June 2006 MRI which revealed disc bulges at L2-3, L3-4, and L5-S1, but without herniation.  (R. 470-98).

Finally, the ALJ took testimony from Joyce Courtright, a vocational expert (VE). The VE was asked to assume an individual capable of light exertional work with occasional postural limitations with no above shoulder reaching and only occasional climbing stairs, but no ropes, ladders, or scaffolds and limited to simple one-to-four step work.  On this assumption, the VE identified assembly occupations such as small products assembly, wrapping and packing jobs, and jobs such as merchandise marking as available in the local and national economy.  Assuming capacity for only a ten-pound lift, such person could perform sedentary work such as final assembler, production inspection, and stone setting. Finally, the VE opined that if Dr. Colon's RFC was fully credited and Plaintiff could not work eight hours a day no jobs were available to her.  Similarly, even if she could work eight hours

a day but was likely to miss four days or more a month as a result of her impairments, no competitive work would be available. (R. 495-99).

Also before the ALJ were medical records which are addressed herein as necessary.

On June 25, 2008, the ALJ determined that while Plaintiff has severe impairments related to substance abuse, obesity, history of cervical syrinx, psoriasis, herniated disc at L4-5 and stenosis, depression, and spondylolisthesis, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R.16-25). The Appeals Council denied Plaintiff's request for review.

B.

Consideration of the Plaintiff's claims is governed by certain principles. In order to be entitled to Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

5

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff initially complains that the ALJ failed to address and incorporate the manipulative limitations imposed by treating physician, Dr. Colon.  Plaintiff notes that while the ME found reason to criticize Dr. Colon's RFC in certain particulars, the ME evidenced no disagreement with Dr. Colon's findings regarding manipulative limitations which were not otherwise contradicted by the medical evidence.  Consequently, those limitations should have been afforded substantial weight under the applicable standard.  Plaintiff further urges that the stated reasons for discounting Dr. Colon's RFC are unsupported by substantial evidence.  Contrary by the ALJ's findings, Dr. Colon submitted objective and clinical findings in support of his limitations.  Since the manipulative limitations imposed by this doctor go unaddressed and the ALJ affords no good cause for discounting the same, the matter should be reversed.

By her second claim, Plaintiff urges that because the ALJ failed to properly discount the manipulative limitations imposed by Dr. Colon, such limitations should have been included in the hypothetical questions posed to the VE.  Because they were not, the VE's testimony identifying particular jobs do not provide the substantial evidence necessary to support the ALJ's decision.

In response, the Commissioner urges that the ALJ properly afforded the opinions of Dr. Colon limited weight.  Thus, although he was the treating doctor, his opinions were properly discounted as offered without explanation and unsupported by the doctor's own treatment record.  As for the manipulative limitations, the Commissioner urges that the doctor's questionnaire was not accompanied by findings or supporting records.  Furthermore an examining physician, Dr. Abdul Ghani, M.D., found Plaintiff to have normal hand/grip

7

dexterity and normal range of motion in her hands and wrists. Similarly, treating physician Rodolfo Gari, M.D., found Plaintiff's grasp strength a 5/5 on the right and 4/5 on the left. As for reviewing physicians, neither found evidence of manipulative limitations. In sum, the ALJ adequately addressed and properly discounted the RFC conclusions by Dr. Colon. As for the testimony of the VE, the Commissioner urges that the testimony was based on the credible mental and physical limitations found in the record. The failure to include manipulative limitations was not error given the lack of support in Dr. Colon's RFC findings.

At the outset, it is worth noting that Plaintiff made no similar claim before the ALJ that she was limited in manipulation and/or handling. Although she testified to painful psoriasis in her extremities, she made no claim, as here made, that it affected her in this way. Nor was any such claim raised by her representative at the hearing. *See* (R. 460-62). Because the matter is raised for the first time in this court, it is subject to denial for that reason alone.[3]

As for the substance of her claims, Plaintiff is correct that in this Circuit, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440

---

[3]As a general rule, an argument not raised in the administrative hearing cannot be raised on appeal. *See Alacare Home Health Services, Inc. v. Sullivan*, 891 F.2d 850, 855 n.5 (11th Cir. 1990). While I choose to address the substantive aspects of the claim, I note that it is a recurring problem that issues are raised on appeal that should have first been raised at the administrative level. While I recognize it is the ALJ's duty to develop a full and fair record, here, Plaintiff was represented by an experienced representative who surely owed her a duty of fully present her claims in the forum where such matters are first to be decided. As the hearing record reflects, he asked no questions related to limitations with manipulation of either the Plaintiff or the VE. In the circumstances, the ALJ is hardly to blame for not inquiring about a matter not raised by the claimant.

(11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Here, the first claim turns on whether the ALJ has stated adequate good cause to discount this RFC assessment. Under this standard, good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). After full review of the decision in light of the medical record, I conclude that the ALJ has stated adequate good cause and, as a consequence, Plaintiff is not entitled to relief on her either of these claims.

Given the ALJ's statement that he has considered the RFC questionnaire completed by Dr. Colon (R. 23), I am obliged to conclude that the ALJ considered the whole of the assessment, including any restrictions on manipulation. And, to the extent that the ALJ chose to give this doctor's RFC assessment little weight, I am also obliged to conclude that he did so as to the whole of the assessment. In discounting the assessment, the decision reflects that this doctor's RFC assessment was discounted because his check mark responses on the questionnaire reflected conclusory opinions unsupported by explanations; were unaccompanied by objective evaluation/findings or examination reports to support such extreme limitations; and appeared based on Plaintiff's self-serving complaints rather than objective examinations. In further support of his conclusion, the ALJ cited the ME's testimony that, upon his review of the records, Dr. Colon's findings were not credible because they were contrary to his own findings. Additionally, the ALJ found that Plaintiff had not

undergone physical therapy nor complied with her medicine regimen and occasionally used marijuana instead. (R. 23). By my consideration, in light of the medical record from Dr. Colon as well as the record as a whole, I find that the ALJ has stated adequate good cause for discounting the doctor's assessment.

A review of Dr. Colon's records does not reveal the complaints, clinical findings nor the objective evidence to support the Plaintiff's claims of manipulative limitations. While there is objective evidence of degenerative conditions along Plaintiff's spine and a cervical syrinx,[4] this doctor's findings on physical examinations are minimal. On his early physical examination in August 2006, the findings were essentially normal. He recommended only conservative treatment which included medications, physical therapy and injections. It does not appear that she undertook any physical therapy. When an epidural was obtained, Plaintiff claimed it only worsened her condition. The doctor's later reports do not reflect any worsening physical findings. Indeed, only one report, by the doctor's ARNP, references her severe psoriasis, unspecified joint pain, and the need for a diagnostic work-up by the primary care doctor. It does not appear that such work-up ever occurred. (R. 399-408). In short, the ALJ's finding that the severe and conclusory limitations imposed by this doctor in April 2007 were not evidenced by the clinical findings appears supported. Furthermore, by the ME's testimony, the assessment later provided was in fact inconsistent with the clinical findings of

---

[4]Objective evidence from 2004 reflects disc bulge and stenosis at L4-5, disc bulge and spondylosis at C5-6, cervical syrinx centered at C6, and central disc bulge at T3-4. (R. 329-35). An MRI of the cervical spine in June 2006 revealed a syrinx at C6 extending to C7, bulging discs at C5-6 and C6-7, and disc protrusion at T3-4. (R. 388). A lumbar spine MRI revealed grade 1 spondylolisthesis with 1 cm sublaxation at L4-5, disc protrusion and bilateral foraminal stenosis at L4-5, disc bulging at L2-3 through L5-S1. (R. 396).

the doctor and other examining or treating doctors. While the ME did not speak directly to manipulative limitations, as noted above, neither was he questioned about them and his testimony is not otherwise shown to be incorrect in light of the medical evidence. Plaintiff's claim that the manipulative limitations by Dr. Colon are thus unrefuted is unfounded. As the decision reflects, the ALJ reviewed records from several examining or treating doctors. None made functional findings similar to Dr. Colon. In August 2004, Dr. Abdul Ghani, M.D., conducted a physical examination which revealed normal hand grip and dexterity. Regarding extremities, the report noted, "[n]o edema. Pulses good. No acute arthritis, generalized psoriasis in arms and legs, more so in legs. No deformity of bones and joints." (R. 253-54). In a 2007 report from Dr. Rodolfo Gari, M.D., the doctor reported hand grasp was 5/5 on the right and 4/5 on the left. There is no mention of problems with the hands. (R. 413-14). In sum, I find adequate good cause to discount the RFC assessment by Dr. Colon. Significantly, Plaintiff never claimed to have such limitations and she fails to demonstrate from the medical record that she suffered such limitations.

On her second claim, as urged by the Commissioner, the ALJ is not required to include findings in the hypothetical to the VE that have been properly discounted or are unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1270 (11th Cir. 2007). Having concluded that there was no medical support for these manipulative limitations, there is no error in the ALJ's failure to include such limitations in his hypothetical to the VE.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 2nd day of February 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record